```
     IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

       MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


CHARLES TOMBERLIN II,       )
                            )
    Plaintiff,              )
                            )         CIVIL ACTION NO.
    v.                      )          2:12cv1052-MHT
                            )               (WO)
MARNIE CLARK                )
(formerly Tomberlin),       )
et al.,                     )
                            )
    Defendants.             )
```

OPINION AND ORDER

Plaintiff Charles Tomberlin II brought this lawsuit against a number of defendants who he alleges caused him to lose custody of, and visitation with, his child and landed him on the Alabama State Central Registry on Child Abuse and Neglect. The defendants are Marnie Clark, Leah Waller, Janee Dickinson, Alisha Ruffin, Julie O'Connor, Karol M. Beck, Wellspring Christian Clinic, Inc., Michael Fetter, and Child & Adolescent Psychological Services of Inverness (C & A). Tomberlin asserts that these defendants violated his rights under the Fifth and Fourteenth

Amendments to the United States Constitution as enforced through 42 U.S.C. § 1983 and committed a panoply of state-law torts.  This court's jurisdiction has been invoked pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 1367 (supplemental).

This cause is now before the court on three types of motions: a motion to stay (filed by Beck and Dickinson); motions to dismiss (filed by Fetter, C & A, Dickinson, Beck, O'Connor, and Ruffin); and motions to transfer venue (filed by Clark, O'Connor, Fetter, and C & A).  For the reasons that follow, the motion to stay will be denied, the motions to transfer granted, and the motions to dismiss left for disposition after transfer of this case.

I.

The events in this case were born of a bitter divorce between Tomberlin and Clark.  The two were married in 2003 and divorced in 2010.  In the years leading up to the divorce, starting in 2008, Clark made a number of

2

allegations about Tomberlin, including that he had sexually abused their five-year-old child. Ultimately, Clark brought this claim to the Shelby County Department of Human Resources. During the department's investigation, Tomberlin's custody and his right to visit his child were severely limited; at times, his right to visit his child was severed completely.

Despite numerous determinations from individuals both inside the department and outside of it (including a judge in the Shelby County Juvenile Court where the Department filed dependency and neglect allegations against Tomberlin) that the abuse allegations were baseless, the department made a final determination in September 2010 that the allegations were true. Tomberlin was placed on the Alabama State Central Registry on Child Abuse and Neglect.

A few months later, when a final divorce decree was issued, that court stated that it could find no factual basis for Clark's claims that Tomberlin had sexually abused their child. The Alabama Attorney General then filed a

motion to continue Tomberlin's case and mandated the expungement of his name from the Alabama State Registry on Child Abuse and Neglect.  On December 16, 2011, Tomberlin received a letter informing him that his name had been removed from the list.

Tomberlin denies Clark's accusations entirely.  He also ascribes to her a cunning motive: these fabrications, he says, were a means of winning custody over their child in the divorce proceedings.  Indeed, he notes that Clark filed for an ex-parte protection order, in which she made her first accusations against him, three days before she initiated the divorce proceedings.  Her sexual-abuse allegation, he contends, came five days after Tomberlin expressed the desire during marriage-counseling sessions he attended with Clark to have joint custody of their child.

Tomberlin is now suing Clark and eight other individuals and entities who acted as agents of, or in association with, the Shelby County Department of Human

Resources during its investigation of Tomberlin, claiming that they violated his constitutional rights and committed a number of state-law torts.

## II.

Six of the defendants (Fetter, C & A, Beck, Dickinson, O'Connor, and Ruffin) have moved to dismiss this case, three of whom (Fetter, C & A, and O'Connor) moved alternatively to transfer this case from the Middle District of Alabama, where it was filed in Montgomery, to the Northern District of Alabama to Birmingham.  Clark also moved to transfer venue to the Northern District of Alabama.

Beck and Dickinson have asked this court to stay resolution of the transfer motions pending a decision on their motion to dismiss.  First, because this court believes this case should be transferred, this court will not impede upon the province of the transferee court by

deciding the dismissal motions.  The motion to stay will be denied.

Second, the court now turns to the transfer motions. A district court may transfer a civil action to another district in which it might have been brought pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of the parties and witnesses, in the interest of justice." Federal courts normally defer to the plaintiff's choice of forum; thus, the burden is on the movants to show that the proposed transferee forum is more convenient. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). In determining whether the movants have met this burden, the court has considerable discretion in weighing conflicting arguments about venue, but it must engage in an individualized, case-by-case analysis of both convenience and fairness. Carroll v. Texas Instruments, Inc., ___ F. Supp. ___, ___, 2012 WL 1533785, at *1 (M.D. Ala. 2012) (M. Thompson, J.).

Before undertaking this analysis, however, the court must determine whether the transferee venue is one in which

the case could have originally been brought.  28 U.S.C. § 1404(a); see Carroll, ___ F. Supp. ___, ___, 2012 WL 1533785, at *1.  Here, there is no disputing that this action could have been brought in the Northern District of Alabama; the plaintiff and eight of the nine defendants all reside or are based there, and the events at issue in this case mostly took place there.  Accordingly, the court will proceed to the weighing analysis.

In deciding whether justice and convenience favor transfer, "courts generally consider a number of non-exhaustive factors," including "the plaintiff's initial choice of forum; the convenience of the parties; the relative means of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency." Carroll, ___ F. Supp. ___, ___, 2012 WL 1533785, at *2. The court will now address these factors in turn.

7

The Plaintiff's Choice of Forum

The first factor, the plaintiff's initial choice of forum, obviously weighs against transfer.  As a general matter, the plaintiff's choice of forum is entitled to great deference and, "unless the balance is strongly in favor of the defendant, ... [it] should rarely be disturbed."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  However, in these circumstances, this choice may merit somewhat less weight because the Middle District of Alabama is not the home district for Tomberlin, the plaintiff here.  Further, only one of the nine defendants in this case resides in the Middle District, and the events underlying this action took place primarily in the Northern District.  See, e.g., Dendy v. Decker Truck Line, Inc., No. 2:10cv459-MHT, 2010 WL 3398987 (M.D. Ala. Aug. 26, 2010) (M. Thompson, J.) ("The normal heft of [the plaintiff's choice of forum] is lessened in this case. ... Because the Middle District is not [the plaintiff's] home forum, the presumption in the plaintiff's favor applies with less

force, for the assumption that the chosen forum is appropriate is then less reasonable.") (quotations and citations omitted); see also Macedonia Church v. Lancaster Hotel Ltd. Partnership, 425 F. Supp.2d 258, 259 (D. Conn. 2006) (A. Thompson, J.) ("[T]he deference accorded to the plaintiff's choice of forum is diminished substantially where the forum is neither the plaintiff's home district nor the place where the events or transactions underlying the action occurred.") (quotations and citations omitted); S.J.G. Enterprises, Ltd. v. Eikenberry & Associates, Inc., No. 04 C 1186, 2004 WL 1794475, at *3 (N.D. Ill. Aug. 5, 2004) (Kocoras, C.J.) ("A plaintiff's choice of forum is entitled to substantial weight ..., particularly when the transferor court sits in the plaintiff's home district. On the other hand, where the plaintiff's chosen forum is not the plaintiff's home or the location of material events, the plaintiff's choice is entitled to less deference.") (citations omitted).

### Convenience and Relative Means of the Parties

The court next turns to the convenience and relative means of the parties. This factor weighs heavily in favor of transfer. Tomberlin and eight of the defendants are based in the Northern District of Alabama. Only one defendant, Beck, resides in the Middle District. In addition, defendant Clark submitted an affidavit explaining that keeping this case in the Middle District would significantly inconvenience her because of her responsibility to care for her child, who attends school in downtown Birmingham only a few blocks from the United States District Courts for the Northern District of Alabama. Clark further explained that it would be difficult for her to find other care for her child because both her mother and sister, who would normally care for her child in Clark's absence, are also listed as witnesses and would have to be in Montgomery, the seat of the Middle District.

Meanwhile, Tomberlin has given this court no reason to believe that it would be more inconvenient for him or the eight defendants located in the Northern District for this case to be tried there. As for Beck, the court has not been alerted to any particular hardship, financial or otherwise, that transfer would impose on her. Indeed the only assertion Tomberlin makes with regard to Beck is that "her residence is significantly farther from Birmingham, Alabama than the Birmingham Defendants live from Montgomery Alabama." Pl.'s Resp. (Doc. No. 58) at 22. The bare fact that Beck lives farther from Birmingham than the other eight defendants live from Montgomery (and indeed, Tomberlin does not even specify how far from Birmingham Beck actually lives) does little to tilt this factor in his favor.

## Convenience of Witnesses

The next factor this court must address is the "convenience for and cost of attendance of witnesses."


Carroll, ___ F. Supp. ___, ___, 2012 WL 1533785, at \*3 (quotations and citations omitted).  This factor is normally a highly significant one; indeed, where non-party witnesses are concerned, "it is sometimes dubbed the single most important factor in determining whether the transfer of venue is proper."  Id.

In considering this factor, a court must not "merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." Id. (quotations and citations omitted). Indeed, witness lists are often pages long and include numerous witnesses with only peripheral knowledge of events at issue in the case and who are highly unlikely to be called at trial.  Thus, some courts consider it helpful for the party seeking transfer to "clearly specif[y]" the witnesses it will call and "make[] a general statement of what their testimony will cover."  Id. (quotations and citations omitted).

Here, the parties have offered the court only scant information about the witnesses. Fetter and C & A make the general contention that "the witnesses called by or retained by th[e] parties are ... likely to live in [the Northern] [D]istrict." Defs.' Mot. (Doc. No. 53) at 11. Tomberlin responds that he "intends to call no less than 11 witnesses, all of whom either live in the Middle District of Alabama or in the panhandle area of Florida." Pl.'s Resp. (Doc. No. 58) at 22. However, it is unclear whether this ambiguous assertion means that __all__ of the witnesses Tomberlin plans to call live in the Middle District (which seems highly unlikely given that all of the events at issue in this case took place in the Northern District) or whether there are simply 11 witnesses who live in the Middle District out of the many he will call in this case. As Clark points out, Tomberlin listed the parties and 53 other witnesses in his initial disclosures as discoverable witnesses. In that list, Tomberlin does not make any distinction between those witnesses he will call

13

and those he only may call.  For the defendants' part, while both Fetter, C & A, and O'Connor allege that the majority of the witnesses in this case live in the Northern District (and while, given the locus of facts, common sense supports that this assertion is true), none of the defendants provides any details to support this contention.  Thus, the parties have given the court few resources to come to an accurate determination of which forum is, in fact, more or most convenient for the witnesses in this case.

   Therefore, despite the  importance normally afforded to this factor, it carries less weight here, as the court can make only a reasoned guess as to the comparative burden either venue would impose on the witnesses.  That said, given that the locus of events is in the Northern District and that only 11 out of the over 60 witnesses Tomberlin listed in his disclosures reside in the Middle District, the court finds it probable that this prong favors transfer.

### Access to Evidence

The court now turns to access to evidence.  Again, the parties have provided little information to anchor the court's analysis of this factor.  Only Tomberlin even addresses the issue of evidence; he argues that the Child Abuse and Neglect Registry is located at the Office of Protective Services in Montgomery, which, as stated, is the seat of the Middle District of Alabama, and that the Alabama Attorney General's Office and Alabama Department of Human Resources, both of which are involved in this case, are based in Montgomery as well.  The defendants do not counter this argument with any assertions of their own.

The court is skeptical that, were this factor given full exposition by the parties, it would favor Tomberlin. Despite the entities Tomberlin lists that are located in Montgomery, it seems highly improbable that, all told, most of the evidence in this case will be centered in the Middle District rather than where most of the events took place.

15

However, without any concrete information to support this logical inference, the court weighs this factor in Tomberlin's favor.

Still, this court recognizes that heavily weighing "the physical location of some relevant documents ... is somewhat antiquated in the era of electronic storage and transmission." Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009) (Clark, J.). Thus, while technology does not "ma[ke] this factor a complete nullity," it does reduce its weight to some extent. Carroll, ___ F. Supp. ___, ___, 2012 WL 1533785, at *7.

### Locus of Operative Facts

This factor clearly favors transfer. There can be no dispute--and the parties make none--that the events at issue in this case took place in the Northern District of Alabama. Indeed, the only allegations in the complaint that relate to the Middle District involve the intervention

16

of state governmental entities in Tomberlin's case. The core allegations in this case, the ones of abuse against Tomberlin and the subsequent investigation by the Shelby County Department of Human Resource, all took place in the Northern District.

## Local Interest

In order to consider the local interest in holding this case in the Northern District rather than the Middle District of Alabama, "the court considers the factual connection the case has between both venues." Carroll, ___ F. Supp. ___, ___, 2012 WL 1533785, at *8 (quotations and citations omitted). As this opinion has already explained, the facts in this case doubtlessly center in the Northern District. This factor favors transfer.

## Balance of Factors

The parties gave the court few resources to aid it in deciding whether to transfer this case. However, the

allegations and parties to the case tell a clear story: this is a case about people and institutions in the Northern District of Alabama and events that unfolded there. The fact that all but one of the parties, including the plaintiff, are located in the Northern District and that the vast majority of the underlying events took place in that district suffice to meet the moving defendants' burden, especially in the absence of any substantial evidence from Tomberlin that the factors the court considers should weigh in his favor. Moreover, keeping this case in the Middle District would significantly inconvenience Clark, given her childcare responsibilities, and the court has no evidence that any particular hardship (other than the hassle of travel) would burden Beck, the sole party who does not reside in the Northern District, were the case transferred there.

***

Accordingly, for the foregoing reasons, it is ORDERED as follows:

(1) Defendants Karol Beck and Janee Dickinson's motion to stay (Doc. No. 74) is denied.

(2) Defendants Michael Fetter, Child & Adolescent Psychological Services of Inverness, P.C., Marnie Clark, and Julie O'Connor's motions to transfer venue (doc. nos. 53 & 68) are granted.

(3) This lawsuit is transferred in its entirety to the United States District Court for the Northern District of Alabama.

(4) All other pending motions are left for resolution after transfer.

The clerk of the court is DIRECTED to take appropriate steps to effect the transfer.

This case is closed in this court.

DONE, this the 24th day of May, 2013.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE